RECEIVED

12/8/2021   LK

THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

IN THE UNITED STATES DISTRICT COURT FOR
THE NORTHERN DISTRICT OF ILLINOIS EASTERN DIVISION

| | |
|---|---|
| Lisa L. Brewer, Plaintiff )<br>v )<br>Affinity Development Group d/b/a )<br>Jeff Skeen, individually; )<br>Gary Drean, individually; )<br>Gina Paolino, individually; )<br>Beth Chaponis, individually; )<br>Tammy Compere, individually; )<br>Laura Fletcher, individually; )<br>Defendants | Case No. **1:21-CV-06580**<br>**JUDGE GUZMAN**<br>**MAGISTRATE JUDGE JANTZ**<br>**RANDOM**<br><br>**Jury Demand Endorsed Hereon** |

## COMPLAINT

Plaintiff is Lisa L. Brewer, currently Pro Se for the purpose of this filing.

### PARTIES

1. Plaintiff is an individual with her principal place of residence in Elk Grove Village, Cook County, Illinois.

2. Defendant Affinity Development Group is incorporated in Delaware doing business in California. The predominant location at which the events were based, relevant to this Complaint is Elk Grove Village, Cook County, Illinois. Defendant does business there and regularly transacts business within the State of Illinois for purposes of jurisdiction and venue in this matter.

3. All the individual defendants are management employees and or executives of Defendant Affinity Development Group, [hereinafter "ADG"] based in San Diego, California.

### JURISDICTION AND VENUE

4. This action is brought pursuant to Title VII of the Civil Rights Act of 1964; 42 U.S.C. Sec. 1981, as amended by 42 U.S.C. Sec. 2000e, *et seq.*, and the Civil Rights Attorney's fees Awards Act of 1976, 42 U.S.C. Sec. 1988; and the Fair Labor Standards Act of 1938, 29 U.S.C.

Sec. 216(b) and Sec. 626(b).

5. This action is further brought pursuant to the Illinois Human Rights Act, 775 ILCS /1-101 *et seq.;* Supplement Jurisdiction 28 U.S.C. section 1367; and the Illinois ODRISA (820 ILCS 140/3)

6. This Court has original jurisdiction over this matter pursuant to 28 U.S.C. Sections 1331; and 1343 as it is a civil rights action arising under the laws of the United States

7. This Court has pendant jurisdiction over the additional claims in this matter pursuant to Federal Rule of Civil Procedure Rule 18(a) which allows joinder of as many claims as a party has against an opposing party.

8. Venue is proper under 28 U.S.C. Sec. 1391(b) because it is where a subtantial part of the events or omissions giving rise to the cause of action occurred in this district.

## FACTS

9. Plaintiff Lisa Brewer was solicited for employment with Defendant ADG beginning in August 2018 by San Diego based Recruiting firm, Tristaff Group of Companies, ("Tristaff"). Telephone and video interviews were conducted with Director Tammy Compere, Managers Chris Lanciault and Yusen Torres; Beth Chaponis, Vice President of Operations and Tammy Compere travelled to Illinois.

10. Ms. Brewer was hired as a full-time Warehouse Marketing Support (WMS) Visitor who worked remotely out of her Elk Grove Village, Illinois, home. Her employment began on October 8, 2018

11. Ms. Brewer reported directly to Laura Fletcher, who was also just starting in this new position as manager. As a result, Ms. Brewer was required to report to Compere as well, although she was never informed of Fletcher or this unusual double manager arrangement and it was atyppical

she was never informed of Fletcher or this unusual double manager arrangement and it was atyppical for successful WMS Visitor who was travelling independently as Brewer was after passing the initial 9 week evaluation (indicated by her first solo trips late November and mid December 2018).

12. From at least October 2018 to May 2019, as a condition of being a Black Female – engaged in protected activities, Ms. Brewer endured a pattern of harassment, disparate treatment, racial stereotyping, and was knowingly subjected to unjustified and factually unsupported disciplinary actions. The contrived disciplinary actions were designed to improperly manufacture a basis for further discipline, termination and other retaliatory actions against Ms. Brewer. Initiated by her 2 managers, this hostile work environment was condoned by Human Resources Trish Templeton, Executive Managers Beth Chaponis, Gina Paolino, Gary Dreen and CEO Jeff Skeen.

13. Similarly-situated current and former WMS Visitors Yusen Torres, who is Hispanic and Maurice Flanagan who is Black, Puerto Rican and homosexual, also experienced discrimination on the basis of their protected statuses, occurring across a timeline that established ongoing patterns before and after Ms. Brewer's employment. Torres was subject to workload disparities -Flanagan as well, in addition to harrassment, inappropriate sexual identity questions and disparate treatment by his manager Laura Fletcher in a manner consistent with Ms. Brewer experiences. Flanagan was also subjected to racial and homophobic slurs.

14. **During Brewer's employment at ADG:**

(A) She was given the most Costco warehouses to service and visit of all ADG WMS Reps (62) plus 3 scheduled for Summer 2019 (65). The other Black WMS Rep (Flanagan), had the 2nd most (56), while White WMS Reps instead were assigned substantially fewer to visit and service.

(B)  She was rated low and her post trip evaluations were falsified to show she did not visit certain stores when in fact she had.  She was also penalized if she did not enter visit notes within 24 hours or before midnight on same day of travel. White peers and ADG Policy allowed for 48 hours

(C)  She was held to stricter requirements compared to others, numerous times by Fletcher and Compere that were inconsistent with ADG policy, specifically:

      1.  The extension of deadlines past 5pm for Costco arrivals/visits

      2.  Denied autonomy to execute her unique geography travel plans

      3.  Deliberately redundant travel plan exercises with unexplained rejections

      4.  1 or 2 weeks lead time Vs the required 3 weeks to complete pre-visit work

      5.  Unsafe late evening, early morning travel despite daily 10am appointment

      6.  Denial of hotel (s) and or Sunday night travel where appropriate

(D)  She was subject to an abuse of power and violation of privacy as a trainee with an outrageous misuse of company time, being led to the school of Laura Fletcher's daughter - interviewed under the guise of a school assignment.

(E)  She was embarrassed and ridiculed at a company dinner with inappropriate dissemination of her personal information regarding marital status (Fletcher); Questions about being a mixed-race couple with fiance who is White (Fletcher, Compere).

(F)  She was referred to as a "work mule" and degraded in an email by Fletcher (shared with Compere); "you were hire to cut costs and save [us] money;"  while rejecting Ms  Brewer's valid travel plan that incorporated a standard hotel stay as a matter of safety December 2018.

(G) She was denied a legitimately needed sick day by Compere, in Northern IL November 2018, having contracted the flu (prevalent at the time), Ms. Brewer "did not want to contaminate Costco workers."

(H) She listened to racist views and stereotypes about Blacks during travel in Wisconsin November 2018 with Compere, citing "...it is expected and more normal for Blacks to be homeless;" she "...didn't like being around Blacks..." in speaking of her own experience in domestic violence shelters following an abusive first marriage.

(I) She was subject to abuse of power, being expected to feign lesbianism on her personal time at a dinner between Compere and her "2-year-estranged Gay, homeless son." [while training together in Wisconsin, November 2018.]

(J) She was treated with hostility and negative comments in her personnel file by Compere for politely declining the personal dinner with her son. This, despite Ms. Brewer being ill, having no lunch and successfully "dragging" herself through 9 to 12 "solo" Costco meetings and apologizing repeatedly.

(K) She was undermined in her work and often "double teamed" with inconveniently timed, "sneak attack" style calls with Fletcher and Compere, designed to coerce submission or obfuscate issues in a harassing way. This was unique to Ms. Brewer, per her 2nd solo trip in Pocatello Idaho, December 18, 2018 and similarly with Flanagan in NJ by Compere;

(L) She had her personal calls monitored, saved and shared between Fletcher, Compere and potentially other employees, in direct violation of the company Employee Call Monitoring and Recording Policy.

(M) She had several [benign] personal calls, emailed by Compere, having used them completely out of context to make false work performance complaints against Ms Brewer in her personnel file - outrageous!

(N) She was expected to eat meals in her vehicle to "limit interruptions to our day," while she was extensively cross-country! Emails from Fletcher dated December 17 & 18, 2018 gives reference

to this and the strict requirement to shop for those "meals" aka groceries and water etc, on days of travel only; Purchases the night before departing would not be tolerated or reimbursed. Because Ms. Brewer simply was not allowed to utilize sensible travel plans that accommodated normal meal and rest breaks. Additionally, she was required to work at all hours of the day, whether travelling or not.

(O) She was issued an "Employee Counsel" document (which was a PIP) by Compere on New Years Eve, Dec. 31, 2018, without notice, prior warning or any discussion as to what an "Employee Counsel" is (it is not referenced anywhere in the Employee Handbook).

1. Compere initially argued and demanded Ms. Brewer to use her legal New Year's Day Holiday to submit a written response by Monday January 3rd, 2019, coinciding with Ms. Brewer's birthday on January 4th.

2. This PIP was so improper and abusive (contrary to how similarly situated white employees were treated, as well as contrary to ADG's policies), that following Ms. Brewer writing a detailed rebuttal to this PIP, Trish Templeton (HR Director) by e-mail dated Feb. 1st directed that the PIP be rewritten!

3. The rewritten version of the PIP was also improper; it reinforced the invalidity of the first version PIP by the removal of all performance-based complaints against Ms. Brewer! It contained mere generic statements of work duties that would be applicable to anyone in the WMS Rep. role.

4. The PIP unfathomable considering Ms. Brewer'sher work background and the success she was building quickly in the role. There was not a single criticism from or about her work with Costco – just administrative musings: low printer ink, Iphone use or where someone else mis-parked their car. Ms. Brewer has collected many trophy emails and compliments from ADG and Costco. Her North Riverside IL Costco was so impressed that they invited her to speak at private

Costco event with the local Chamber of Commerce (January 2019 )!  No other WMS Visitor has ever received such an invitation and Compere never acknowledged any requests to attend.

5.  Also relevant is Ms. Brewer's background.  She has a strong work ethic having graduated on scholarships from Lake Forest College with a Science Degree; She worked as a chemist for Helene Curtis for years then transitioned into sales after they were sold.  She earned many awards, trips and life long friends from her years as a top sales rep in very challenging fields.

6.  About Feb 10th and March 19, 2019, Templeton verbally advised Ms. Brewer in phone calls that the PIP had been <u>removed</u> from Ms. Brewer's personnel file, that she was no longer under a PIP, and that <u>her employment was to continue as if she had never been placed on a PIP.</u>

7.  Understandably this had been very stressful to Ms. Brewer being presented with such PIP(s) and presumably being under them for approx. 2-3 months.  Yet on May 30, 2019, ADG's legal counsel Eric Campbell revealed in a conversation with attorney David Porter (on behalf of Ms Brewer), that <u>the PIP(s) had not been removed, that Ms. Brewer had continued to be under them, and that they were still in her file</u> - which is concerning given Trish Templeton's advice to Ms. Brewer.

15. **After she complained, she was retaliated against in that:**

(A)  She was demoted in her work responsiblities per a fiscal year calendar showing for a period of 3 months (1/14/19 – 4/12/19), ADG's management imposed a Travel Ban on her.

(B) This Travel Ban undermined Ms. Brewer and her employment; interfered with her work performance and was a failed attempt to sabotage the good standing she maintained with Costco

(C) During this period ADG management repeatedly told Ms. Brewer that she would be traveling on certain dates, but then would pull back & change those dates (yanking her around)

frequently after Ms. Brewer had spent substantial time preparing to travel to particular Costco locations.

(D) Tammy Compere falsely accused Ms. Brewer on a department wide conference call of cheating to inflate her good to excellent performance numbers - which we believe was not only in appropriate, but a racist accusation as well.

(E) Ms. Brewer apparently had the highest performance numbers for 3 months of all the reps in her department. After this was brought to light, Compere removed Ms. Brewer's access to the comparative performance numbers of the team - which until that time had been readily accessible and publicly known by the all Reps.

(F) Management allowed or encouraged employee(s) Cory Benwell to underperform or attempt to sabotage her Costco accounts - 3 different RV Roadshow events - (Lake Zurich, Billings, and Twin Falls Costco's). E-mails show that Twin Falls requested dates for March back in January 2019 but scheduler Cory Benwell (White) failed to properly execute. There no management acknowledgement of this whatsoever, in spite of prior history of discriminatory behavior towards the only other Black memeber of the team (Flanagan).

(G) Manager Fletcher sabotaged and caused the cancellation of a RV show event for Ms. Brewer's Lake Zurich IL account, while she away travelling in her territory. It was under tenous circumstances that Ms Brewer even managed to get the higher level Costco approval needed

(H) She was more strictly held to data entry and photo upload requirements, some cases counterproductive to Costco interests, while others flagrantly abused them without action taken.

(I) This Travel Ban was only lifted mid-April 2019 apparently so that Affinity could have Ms.Brewer show her White replacement (Kailyn Breshnaham) the Costco warehouses in Ms. Brewer's region and introduce Kailyn to the Costco employees at those locations.

ADG management even went so far as to delay having Ms. Brewer going to customers in order to accommodate Kailyn's schedule - which also interfered with Ms. Brewer's performance.

(J) ADG management had inexperienced White peer, Kailyn Breshnahan, secretly reviewing and reporting Ms. Brewer's performance to Compere and Fletcher. ADG management had requested that Kailyn fill out a Management form pertaining to Ms. Brewer's performance, but did not conversely have Ms. Brewer fill out a form regarding Kailyn's performance. Ms. Brewer was not aware that Kailyn was doing this and e-mails show that Ms. Brewer was told that Kailyn would accompany her strictly to support her as a peer, answer questions as needed, and would not be reporting to management.

(K) Kailyn Breshnahan was several hours late joining Ms. Brewer on the trip. She elected to not visit the required competitor Sam's Club and only worked 2 out of the 5 days feigning illness with no physical symptoms (recall section 14G - Ms Brewer was legitimately ill but was PIP'd for declining a dinner on her off hours time).

(L) She was denied tools repeatedly by her manager(s) that were provided to similarly situated white reps (contrary to company policy), which made Ms. Brewer's job more difficult and undermined her employment. Specifically:

> 1. Business Cards – Received after April 20th; This confused Costco employees as to who their support rep was.
>
> 2. Company Clothing – Received the 2nd week of April; This served to have her look like a "trainee on probation" rather than a regular ADG employee on visits.
>
> 3. Costco Card – Management did not inform her of this essential, time saving entitlement.
>
> 4. Q Drive Folder creation – Received late April 2019. Needed for vehicle damage procedures.
>
> 5. Ms. Brewer's contact info was missing from the New Warehouse Call Report. Alerted with Chris Lanciault on 11/5/2018 and with Compere on 11/26/2018.

Fixed April 2019

6. Travel Expense Card – Never received. Brewer's personal credit was negatively impacted by the burden of carrying company expenses for a prolonged period and made travel needlessly more difficult.

16. On May 8, 2019 while Ms. Brewer was in territory, facing a 3.5 hour drive through the Dakotas and a 2.5 hour drive to Baxter MN [inbetween store visits] on her itinerary. Records show that ADG executives were busy approving her termination. Upon returning to her office on the 13th, Ms Brewer received electronic notification that she had been "separated" from ADG.

17. On May 30, 2019 Ms. Brewer's termination was final.

18. Post termination, Ms. Brewer was replaced by a White male who was not assigned the same 62 warehouses as she, but a much smaller count instead.

19. The EEOC issued a Dismissal and Notice of Rights to Ms Brewer dated September 9, 2021, on Charge 488-2021-00591, which asserts Title VII discrimination bases race, sex, age and retaliation. See copy of Charges attached with Exhibit A.

## COUNT I - RACE DISCRIMINATION, SEC. 1981, AGAINST
## AFFINITY DEVELOPMENT GROUP

20. Plaintiff Ms. Brewer re-asserts the allegations of sections 1-19 above. On information and belief, Ms. Brewer was wrongfully harrassed, PIP'd, denied support from Affinity Development Group, downrated, travel banned, denied proper meal and rest breaks through unduly aggressive travel plans, had her bonus reduced, was humiliated in front of her co-workers, and eventually terminated, because of her race, Black.

21. Ms. Brewer has suffered extreme mental anguish and embarrassment before her friends and family, has lost wages, income, benefits, and; opportunity for advancement, and has been unable

to enjoy the ordinary pleasures of everyday life, due to the violation of Sec. 1981 committed by Affinity Development Group.

WHEREFORE, Plaintiff Ms. Brewer respectfully requests and prays this Court will order the following relief against Affinity Development Group:

A. Compensatory damages to fully compensate for her injuries, pursurant to and within statutory limits.

B. Back pay, pre- and post-judgment interest, lost benefits, lost increases and promotions, either the position she should have been promoted to OR front pay to make Plaintiff whole;

C. Punitive damages;

D. Reasonable attorney's fees and costs of this suit; and

E. Such further relief as this Court deems just.

## COUNT II - RACE DISCRIMINATION, SEC. 1981, AGAINST FLETCHER

22. Plaintiff Ms. Brewer re-asserts the allegations of sections 1-19 above. On information and belief, Ms. Brewer was wrongfully harrassed, PIP'd, denied support from her manager Laura Fletcher, downrated, travel banned, denied proper meal and rest breaks through unduly aggressive travel plans, had her bonus reduced, was humiliated in front of her co-workers, and eventually terminated, because of her race, B lack.

23. Ms. Brewer has suffered extreme mental anguish and embarrassment before her friends and family, has lost wages, income, benefits, and; opportunity for advancement, and has been unable to enjoy the ordinary pleasures of everyday life, due to the violation of Sec. 1981 committed by Laura Fletcher.

WHEREFORE, Plaintiff Ms. Brewer respectfully requests and prays this Court will order the following relief against Laura Fletcher:

A. Compensatory damages to fully compensate for her injuries, pursurant to and within statutory limits.

B. Back pay, pre- and post-judgment interest, lost benefits, lost increases and promotions, either the position she should have been promoted to OR front pay to make Plaintiff whole;

C. Punitive damages;

D. Reasonable attorney's fees and costs of this suit; and

E. Such further relief as this Court deems just.

## COUNT III - RACE DISCRIMINATION, SEC. 1981, AGAINST COMPERE

24. Plaintiff Ms. Brewer re-alleges the allegations of sections 1 - 19 above. On information and belief, Ms. Brewer was wrongfully harrassed, PIP'd, denied support from her Director Tammy Compere, downrated, travel banned, denied proper meal and rest breaks through unduly aggressive travel plans, had her bonus reduced, was humiliated in front of her co-workers, and eventually terminated, because of her race, Black.

25. Ms. Brewer has suffered extreme mental anguish and embarrassment before her friends and family, has lost wages, income, benefits, and; opportunity for advancement, and has been unable to enjoy the ordinary pleasures of everyday life, due to the violation of Sec. 1981 committed by Tammy Compere.

WHEREFORE, Plaintiff Ms. Brewer respectfully requests and prays this Court will order the following relief against Tammy Compere:

A. Compensatory damages to fully compensate for her injuries, pursurant to and within statutory limits.

B. Back pay, pre- and post-judgment interest, lost benefits, lost increases and promotions, ether the position she should have been promoted to OR front pay to make Plaintiff whole;

C. Punitive damages;

D. Reasonable attorney's fees and costs of this suit; and

E. Such further relief as this Court deems just.

## COUNT IV - RACE DISCRIMINATION, SEC. 1981, AGAINST CHAPONIS

26. Plaintiff Ms. Brewer re-alleges the allegations of sections 1 - 19 above. On information and belief, Ms. Brewer was wrongfully harrassed, PIP'd, denied support from VP of Operations Beth Chaponis, downrated, travel banned, denied proper meal and rest breaks through unduly aggressive travel plans, had her bonus reduced, was humiliated in front of her co-workers, and eventually terminated, because of her race, Black.

27. Ms. Brewer has suffered extreme mental anguish and embarrassment before her friends and family, has lost wages, income, benefits, and; opportunity for advancement, and has been unable to enjoy the ordinary pleasures of everyday life, due to the violation of Sec. 1981 committed by Beth Chaponis.

WHEREFORE, Plaintiff Ms. Brewer respectfully requests and prays this Court to order the following relief against Beth Chaponis:

A. Compensatory damages to fully compensate for her injuries, pursurant to and within statutory limits.

B. Back pay, pre- and post-judgment interest, lost benefits, lost increases and promotions, either the position she should have been promoted to OR front pay to make Plaintiff whole;

C. Punitive damages;

D. Reasonable attorney's fees and costs of this suit; and

E. Such further relief as this Court deems just.

## COUNT V - RACE DISCRIMINATION, SEC. 1981, AGAINST PAOLINO

28. Plaintiff Ms. Brewer re-alleges the allegations of sections 1 - 19 above. On information and belief, Ms. Brewer was wrongfully harrassed, PIP'd, denied support from COO Gina Paolina, downrated, travel banned, denied proper meal and rest breaks through unduly aggressive travel plans, had her bonus reduced, was humiliated in front of her co-workers, and eventually terminated, because of her race, Black.

29. Ms. Brewer has suffered extreme mental anguish and embarrassment before her friends and family, has lost wages, income, benefits, and; opportunity for advancement, and has been unable to enjoy the ordinary pleasures of everyday life, due to the violation of Sec. 1981 committed by Gina Paolina.

WHEREFORE, Plaintiff Ms. Brewer respectfully requests and prays this Court will order the following relief against Gina Paolina:

A. Compensatory damages to fully compensate for her injuries, pursurant to and within statutory limits.

B. Back pay, pre- and post-judgment interest, lost benefits, lost increases and promotions; either the position she should have been promoted to OR front pay to make Plaintiff whole;

C. Punitive damages;

D. Reasonable attorney's fees and costs of this suit; and

E. Such further relief as this Court deems just.

## COUNT VI - RACE DISCRIMINATION, SEC. 1981, AGAINST DREEN

30. Plaintiff Ms. Brewer re-alleges the allegations of sections 1 - 19 above. On information and belief, Ms. Brewer was wrongfully harrassed, PIP'd, denied support from Vice Chairman Gary Dreen,

downrated, travel banned, denied proper meal and rest breaks through unduly aggressive travel plans, had her bonus reduced, was humiliated in front of her co-workers, and eventually terminated, because of her race, B lack.

31. Ms. Brewer has suffered extreme mental anguish and embarrassment before her friends and family, has lost wages, income, benefits, and; opportunity for advancement, and has been unable to enjoy the ordinary pleasures of everyday life, due to the violation of Sec. 1981 committed by Gary Dreen.

WHEREFORE, Plaintiff Ms. Brewer respectfully requests and prays this Court will order the following relief against Gary Dreen:

A. Compensatory damages to fully compensate for her injuries, pursurant to and within statutory limits.

B. Back pay, pre- and post-judgment interest, lost benefits, lost increases and promotions, either the position she should have been promoted to OR front pay to make Plaintiff whole;

C. Punitive damages;

D. Reasonable attorney's fees and costs of this suit; and

E. Such further relief as this Court deems just.

## COUNT VII - RACE DISCRIMINATION, SEC. 1981, AGAINST SKEEN

32. Plaintiff Ms. Brewer re-alleges the allegations of sections 1 - 19 above. On information and belief, Ms. Brewer was wrongfully harrassed, PIP'd, denied support from CEO, Jeff Skeen, downrated, travel banned, denied proper meal and rest breaks through unduly aggressive travel plans, had her bonus reduced, was humiliated in front of her co-workers, and eventually terminated, because of her race, B lack.

33. Ms. Brewer has suffered extreme mental anguish and embarrassment before her friends and family, has lost wages, income, benefits, and; opportunity for advancement, and has been unable to enjoy the ordinary pleasures of everyday life, due to the violation of Sec. 1981 committed by Jeff Skeen.

WHEREFORE, Plaintiff Ms. Brewer respectfully requests and prays this Court will order the following relief against Jeff Skeen:

A. Compensatory damages to fully compensate for her injuries, pursurant to and within statutory limits.

B. Back pay, pre- and post-judgment interest, lost benefits, lost increases and promotions, a either the position she should have been promoted to OR front pay to make Plaintiff whole;

C. Punitive damages;

D. Reasonable attorney's fees and costs of this suit; and

E. Such further relief as this Court deems just.

### COUNT VIII - RACE DISCRIMINATION, TITLE VII, AGAINST AFFINITY DEVELOPMENT GROUP

34. Plaintiff Ms. Brewer re-asserts the allegations of sections 1 - 19 above. On information and belief, Ms. Brewer was wrongfully harrassed, PIP'd, denied support, downrated, travel banned, denied proper meal and rest breaks through unduly aggressive travel plans, had her bonus reduced, was humiliated in front of her co-workers, and eventually terminated, because of her race, Black

35. Ms. Brewer has suffered extreme mental anguish and embarrassment before her friends and family, has lost wages, income, benefits, and opportunity for advancement, and has been unable

16

to enjoy the ordinary pleasures of everyday life, due to the violation of Title VII committed by Affinity Development Group.

WHEREFORE, Plaintiff Brewer respectfully requests and prays this Court will order the following relief against Affinity Development Group:

A. Compensatory damages to fully compensate for her injuries, pursurant to and within s tatutory limits.

B. Back pay, pie- and post-judgment interest, lost benefits, lost increases and promotions, either the position she should have been promoted to OR front pay to make Plaintiff whole;

C. Punitive damages;

D. Reasonable attorney's fees and costs off this suit; and

E. Such further relief as this Court deems just.

## COUNT IX - SEX DISCRIMINATION, TITLE VII, AGAINST AFFINITY DEVELOPMENT GROUP

36.  Plaintiff Ms. Brewer re-asserts the allegations of sections 1 - 19 above. On information and belief, Ms. Brewer was wrongfully harrassed, PIP'd, denied support, downrated, travel banned, denied proper meal and rest breaks through unduly aggressive travel plans, had her bonus reduced, was humiliated in front of her co-workers, and eventually terminated, because of her race, B lack

37.  Ms. Brewer has suffered extreme mental anguish and embarrassment before her friends and family, has lost wages, income, benefits, and opportunity for advancement, and has been unable to enjoy the ordinary pleasures of everyday life, due to the violation of Title VII committed by Affinity Development Group.

WHEREFORE, Plaintiff Brewer respectfully requests and prays this Court will order the following relief against Affinity Development Group:

A. Compensatory damages to fully compensate for her injuries, pursurant to and within statutory limits.

B. Back pay, pre- and post-judgment interest, lost benefits, lost increases and promotions, and either the position she should have been promoted to OR front pay to make Plaintiff whole;

C. Punitive damages;

D. Reasonable attorney's fees and costs of this suit; and

E. Such further relief as this Court deems just.

## COUNT X - RACE DISCRIMINATION, IHRA, AGAINST AFFINITY DEVELOPMENT GROUP

38. Plaintiff Ms. Brewer re-asserts the allegations of sections 1 - 19 above. On information and belief, Ms. Brewer was wrongfully harrassed, PIP'd, denied support, downrated, travel banned, denied proper meal and rest breaks through unduly aggressive travel plans, had her bonus reduced, was humiliated in front of her co-workers, and eventually terminated, because of her race, Black

39. Ms. Brewer has suffered extreme mental anguish and embarrassment before her friends and family, has lost wages, income, benefits, and opportunity for advancement, and has been unable to enjoy the ordinary pleasures of everyday life, due to the violation of The Illinois Human Rights Act committed by Affinity Development Group.

WHEREFORE, Plaintiff Brewer respectfully requests and prays this Court will order the following relief against Affinity Development Group:

A. Compensatory damages to fully compensate for her injuries, pursurant to and within statutory limits.

B.  Back pay, pre- and post-judgment interest, lost benefits, lost increases and promotions, and either the position she should have been promoted to OR front pay to make Plaintiff whole;

C.  Punitive damages;

D.  Reasonable attorney's fees and costs of this suit; and

E.  Such further relief as this Court deems just.

### COUNT XI - SEX DISCRIMINATION, IHRA, AGAINST AFFINITY DEVELOPMENT GROUP

40.  Plaintiff Ms. Brewer re-asserts the allegations of sections 1 - 19  above. On information and belief, Ms. Brewer was wrongfully harrassed, PIP'd, denied support, downrated, travel banned, denied proper meal and rest breaks through unduly aggressive travel plans, had her bonus reduced, was humiliated in front of her co-workers, and eventually terminated, because of her race, B lack

41. Ms. Brewer has suffered extreme mental anguish and embarrassment before her friends and family, has lost wages, income, benefits, and opportunity for advancement, and has been unable to enjoy the ordinary pleasures of everyday life, due to the violation of the Illinois Human Rights Act committed by Affinity Development Group.

WHEREFORE, Plaintiff Ms. Brewer respectfully requests and prays this Court will order the following relief against Affinity Development Group:

A. Compensatory damages to fully compensate for her injuries, pursurant to and within statutory limits.

B.  Back pay, pre- and post-judgment interest, lost benefits, lost increases and promotions, and either the position she should have been promoted to OR front pay to make Plaintiff whole;

C.  Punitive damages;

D. Reasonable attorney's fees and costs of this suit; and

E. Such further relief as this Court deems just.

## COUNT XII - RETALIATION, TITLE VII,
## AGAINST AFFINITY DEVELOPMENT GROUP

42. Plaintiff Ms. Brewer re-asserts the allegations of sections 1 - 19 above. On information and belief, Ms. Brewer was wrongfully harrassed, PIP'd, denied support, downrated, travel banned, denied proper meal and rest breaks through unduly aggressive travel plans, had her bonus reduced, was humiliated in front of her co-workers, and eventually terminated, because she complained of disparate treatment to Human Resources.

43. Ms. Brewer has suffered extreme mental anguish and embarrassment before her friends and family, has lost wages, income, benefits, and opportunity for advancement, and has been unable to enjoy the ordinary pleasures of everyday life, due to the violation of the Illinois Human Rights Act by Affinity Development Group.

WHEREFORE, Plaintiff Ms. Brewer respectfully requests and prays this Court will order the following relief against Affinity Development Group:

A. Compensatory damages to fully compensate for her injuries, pursurant to and within statutory limits.

B. Back pay, pre- and post-judgment interest, lost benefits, lost increases and promotions, either the position she should have been promoted to OR front pay to make Plaintiff whole;

C. Punitive damages;

D. Reasonable attorney's fees and costs of this suit; and

E. Such further relief as this Court deems just.

## COUNT XIII - RETALIATION, IHRA, AGAINST CONNECTION

44. Plaintiff Ms. Brewer re-asserts the allegations of sections 1 - 19 above. On information and belief, Ms. Brewer was wrongfully harrassed, PIP'd, denied support, downrated, travel banned, denied proper meal and rest breaks through unduly aggressive travel plans, had her bonus reduced, was humiliated in front of her co-workers, and eventually terminated, because she complained of disparate treatment to Human Resources.

45. Ms. Brewer has suffered extreme mental anguish and embarrassment before her friends and family, has lost wages, income, benefits, and opportunity for advancement, and has been unable to enjoy the ordinary pleasures of everyday life, due to the violation of the Illinois Human Rights Act by Affinity Development Group.

WHEREFORE, Plaintiff Ms. Brewer respectfully requests and prays this Court will order the following relief against Affinity Development Group:

A. Compensatory damages to fully compensate for her injuries, pursurant to and within statutory limits.

B. Back pay, pre- and post-judgment interest, lost benefits, lost increases and promotions, and either the position she should have been promoted to OR front pay to make Plaintiff whole;

C. Punitive damages;

D. Reasonable attorney's fees and costs of this suit; and

E. Such further relief as this Court deems just.

### COUNT XIV - MEAL AND REST BREAK VIOLATIONS ODRISA - AGAINST AFFINITY DEVELOPMENT GROUP

46. Plaintiff Ms. Brewer re-asserts the allegations of sections 1 - 19 above. On information and belief, Ms. Brewer was wrongfully harrassed, PIP'd, denied support, downrated,

travel banned, denied proper meal and rest breaks through unduly aggressive travel plans, had her bonus reduced, was humiliated in front of her co-workers, and eventually terminated, because she complained of disparate treatement to Human Resources.

47. Ms. Brewer has suffered extreme mental anguish and embarrassment before her friends and family, has lost wages, income, benefits, and opportunity for advancement, and has been unable to enjoy the ordinary pleasures of everyday life, due to the violation of the One Day Rest In Seven Act of Illinois by Affinity Development Group.

WHEREFORE, Plaintiff Ms. Brewer respectfully requests and prays this Court will order the following relief against Affinity Development Group:

A Compensatory damages to fully compensate for her injuries, pursurant to and within statutory limits.

B. Back pay, pre- and post-judgment interest, lost benefits, lost increases and promotions, and either the position she should have been promoted to OR front pay to make Plaintiff whole;

C. Punitive damages;

D. Reasonable attorney's fees and costs of this suit; and

E. Such further relief as this Court deems just.

## COUNT XV - COUNT XVII - AGE DISCRIMINATION, IHRA, AGAINST AFFINITY DEVELOPMENT GROUP

48. Plaintiff Ms. Brewer re-asserts the all egations of sections 1-19 above. On information and belief, Ms. Brewer was wrongfully harrassed, PIP'd, denied support, downrated, travel banned, denied proper meal and rest breaks through unduly aggressive travel plans, had her bonus reduced, was humiliated in front of her co-workers, and eventually terminated, because Affinity Development

Group knew or should have known that Tammy Compere did not act in good faith, posing a risk to the company in her treatment of "vulnerable employees", including those over the age of 40.

49. Brewer has suffered extreme mental anguish and embarrassment before her friends and family, has lost wages, income, benefits, and opportunity for advancement, and has been unable to enjoy the ordinary pleasures of everyday life, due to the violation of the Illinois Human Rights Act committed by Affinity Development Group.

WHEREFORE, Plaintiff Brewer respectfully requests and prays this Court will order the following relief against Affinity Development Group:

A. Compensatory damages to fully compensate for her injuries, pursurant to and within statutory limits.

B. Back pay, pre- and post-judgment interest, lost benefits, lost increases and promotions, either the position she should have been promoted to OR front pay to make Plaintiff whole;

C. Punitive damages;

D. Reasonable attorney's fees and costs of, this suit; and

E. Such further relief as this Court deems just.

## COUNT XVI - UNPAID OVERTIME - ADEA and FLSA - AGAINST AFFINITIY DEVELOPMENT GROUP

50. Plaintiff Ms. Brewer re-asserts the allegations of sections 1-19 above. On information and belief, Ms. Brewer believes she may be entitled to overtime in light of the meals, break violations and other abuses endured in her position with Affinity Development Group.

51. Ms. Brewer has suffered extreme mental anguish and embarrassment before her friends and family, has lost wages, income, benefits, and opportunity for advancement, and has been unable to enjoy the ordinary pleasures of everyday life, and wish to preserve her right to pursue any

remedies available to for such violations of the Age Discrimination in Employment Act and the Fair Labor Standards Act by Affinity Development Group.

WHEREFORE, Plaintiff Ms. Brewer respectfully requests and prays this Court will order the following relief against Affinity Developmement Group:

A. Compensatory damages in the amount of the overtime pay to which she may be entitled;

B. Liquidated damages in the same amount of the overtime pay to which she may be entitled;

C. Reasonable attorney's fees and costs of this suit; and

D. Such further relief as this Court deems just.

**LISA L. BREWER (Pro Se)**

Lisa Brewer
1900 Albany Court
Elk Grove Village IL 60007
lisalorene2000@yahoo.com
P: (847) 301-8667
C: (847) 418-0802

## VERIFICATION BY CERTIFICATION

The undersigned, being fully aware of the penalties for perjury under the Federal Code of Civil Procedure and the Illinois Code of Civil Procedure, certifies that she has read the allegations of the foregoing Complaint and that they are true and correct, except those made on information and belief, and as to those, that she believes them to be true and correct.

EEOC Form 161 (11/2020)

## U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

### DISMISSAL AND NOTICE OF RIGHTS

| To: | Lisa Brewer<br>1900 Albany Court<br>Elk Grove Village, IL 60007 | From: | Los Angeles District Office<br>255 E. Temple St. 4th Floor<br>Los Angeles, CA 90012 |
|---|---|---|---|

| ☐ | *On behalf of person(s) aggrieved whose identity is CONFIDENTIAL (29 CFR §1601.7(a))* | | |
|---|---|---|---|

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| 488-2021-00591 | Garrett D. Hoover,<br>Intake Supervisor | (213) 785-3001 |

### THE EEOC IS CLOSING ITS FILE ON THIS CHARGE FOR THE FOLLOWING REASON:

☐ The facts alleged in the charge fail to state a claim under any of the statutes enforced by the EEOC.

☐ Your allegations did not involve a disability as defined by the Americans With Disabilities Act.

☐ The Respondent employs less than the required number of employees or is not otherwise covered by the statutes.

☒ Your charge was not timely filed with EEOC; in other words, you waited too long after the date(s) of the alleged discrimination to file your charge

☐ The EEOC issues the following determination: The EEOC will not proceed further with its investigation, and makes no determination about whether further investigation would establish violations of the statute. This does not mean the claims have no merit. This determination does not certify that the respondent is in compliance with the statutes. The EEOC makes no finding as to the merits of any other issues that might be construed as having been raised by this charge.

☐ The EEOC has adopted the findings of the state or local fair employment practices agency that investigated this charge.

☐ Other *(briefly state)*

### - NOTICE OF SUIT RIGHTS -
*(See the additional information attached to this form.)*

**Title VII, the Americans with Disabilities Act, the Genetic Information Nondiscrimination Act, or the Age Discrimination in Employment Act:** This will be the only notice of dismissal and of your right to sue that we will send you. You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court. Your lawsuit **must be filed WITHIN 90 DAYS** of your receipt of this notice; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

**Equal Pay Act (EPA):** EPA suits must be filed in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that **backpay due for any violations that occurred more than 2 years (3 years)** before you file suit may not be collectible.

On behalf of the Commission

**Garrett D. Hoover** Digitally signed by Garrett D. Hoover
Date: 2021.09.09 17:05:48 -07'00'     For     September 9, 2021

**Rosa M. Viramontes,**
**District Director**     *(Date Issued)*

Enclosures(s)

cc:     **Jeffrey Skeen**
**CEO**
**AFFINITY AUTO PROGRAMS**
**10251 Vista Sorento Pkwy Ste 300**
**San Diego, CA 92121**

EEOC Form 5 (11/09)

| CHARGE OF DISCRIMINATION | Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|---|
| This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form. | ☐ FEPA<br>☒ EEOC | 488-2021-00591 |
| | | and EEOC |

State or local Agency, if any

| Name (indicate Mr., Ms., Mrs.) | Home Phone (Incl. Area Code) | Date of Birth |
|---|---|---|
| **Lisa Brewer** | **847-301-8667** | **1970** |

| Street Address | City, State and ZIP Code |
|---|---|
| **1900 Albany Court, Elk Grove Village, IL 60007** | |

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I Believe Discriminated Against Me or Others. (If more than two, list under PARTICULARS below.)

| Name | No. Employees, Members | Phone No. (Include Area Code) |
|---|---|---|
| **AFFINITY AUTO GROUP** | **Unknown** | **(858) 643-9324** |

| Street Address | City, State and ZIP Code |
|---|---|
| **10251 VISTA SORRENTO PKWY, STE 300, San Diego, CA 92121** | |

| Name | No. Employees, Members | Phone No. (Include Area Code) |
|---|---|---|
| | | |

| Street Address | City, State and ZIP Code |
|---|---|
| | |

DISCRIMINATION BASED ON (Check appropriate box(es).)

☒ RACE ☒ COLOR ☒ SEX ☐ RELIGION ☐ NATIONAL ORIGIN

☒ RETALIATION ☒ AGE ☐ DISABILITY ☐ GENETIC INFORMATION

☐ OTHER (Specify)

DATE(S) DISCRIMINATION TOOK PLACE
Earliest **05-30-2019** Latest **05-30-2019**

☐ CONTINUING ACTION

THE PARTICULARS ARE (If additional paper is needed, attach extra sheet(s)):

**Employer: Affinity Auto Group, formerly known as Affinity Development Group**

**Discrimination based on: Race, Sex, Color, Retaliation and Age**

**The Particulars Are: I was hired by Respondent on or about October 8. 2018 as a Warehouse Marketing Support Visitor. During my employment I was subjected adverse work conditions, policy violations and other disparate treatment apart from my non-Black co-workers, including but not limited to denial of key resources such as business cards, uniformed/logo'd clothing, travel expense card, Costco card, damage report system access (Q drive), improper home office work tools, ... etc.;.False performance reports in my personnel file; Denied access to performance reports for self monitoring same as peers; Under duress was subjected to highly unusual personal favors & requests during work time & personal time such as helping manager Laura Fletcher's kid with home work and berated when I refused to pose as a lesbian to aid Director Tammy Compere reunite with an estranged Gay son during a trip to Wisconsin; Denied sick leave off; Was also subjected to racial and**

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – When necessary for State and Local Agency Requirements |
|---|---|
| I declare under penalty of perjury that the above is true and correct. | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief.<br>SIGNATURE OF COMPLAINANT |
| 10/8/19 *Lisa Brewer*<br>Date      Charging Party Signature | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE<br>(month, day, year) |

EEOC Form 5 (11/09)

| CHARGE OF DISCRIMINATION | Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|---|
| This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form. | ☐ FEPA ☒ EEOC | 488-2021-00591 |

and EEOC

*State or local Agency, if any*

gay stereotyping by the Director and was told by manager Laura Fletcher I was a "work mule" hired specifically to save the company money. I was denied hotels and safe travel plans the same as my peers and was disparately given the largest number of Costco warehouse stores to visit of anyone in the company's history with the least seniority. I was denied proper meal/rest breaks; Denied proper merit based bonuses commensurate for the work I performed. I documented complaints to HR and was retaliated against with PIP's, suspension and subsequently discharged on or about May 30, 2019. This summation is not exhaustive.

I believe I have been discriminated and retaliated against because of my race and sex as a Black female, as well my color and age in violation of Title VII of the Civil Rights Act of 1964, Title IV of the Civil Rights Act of 1984 and the Age Discrimination Act of 1967, as amended. Original complaint was filed within 180 days with the DFEH, a dual filing agency with the EEOC.

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – *When necessary for State and Local Agency Requirements* |
|---|---|
| I declare under penalty of perjury that the above is true and correct. | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief. SIGNATURE OF COMPLAINANT |
| 10/8/19 *Date*     Lisa Brewer *Charging Party Signature* | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE *(month, day, year)* |

with EEOC Form 5 (11/09)

**PRIVACY ACT STATEMENT:** Under the Privacy Act of 1974, Pub. Law 93-579, authority to request personal data and its uses are:

1. **FORM NUMBER/TITLE/DATE.** EEOC Form 5, Charge of Discrimination (11/09).

2. **AUTHORITY.** 42 U.S.C. 2000e-5(b), 29 U.S.C. 211, 29 U.S.C. 626, 42 U.S.C. 12117, 42 U.S.C. 2000ff-6.

3. **PRINCIPAL PURPOSES.** The purposes of a charge, taken on this form or otherwise reduced to writing (whether later recorded on this form or not) are, as applicable under the EEOC anti-discrimination statutes (EEOC statutes), to preserve private suit rights under the EEOC statutes, to invoke the EEOC's jurisdiction and, where dual-filing or referral arrangements exist, to begin state or local proceedings.

4. **ROUTINE USES.** This form is used to provide facts that may establish the existence of matters covered by the EEOC statutes (and as applicable, other federal, state or local laws). Information given will be used by staff to guide its mediation and investigation efforts and, as applicable, to determine, conciliate and litigate claims of unlawful discrimination. This form may be presented to or disclosed to other federal, state or local agencies as appropriate or necessary in carrying out EEOC's functions. A copy of this charge will ordinarily be sent to the respondent organization against which the charge is made.

5. **WHETHER DISCLOSURE IS MANDATORY; EFFECT OF NOT GIVING INFORMATION.** Charges must be reduced to writing and should identify the charging and responding parties and the actions or policies complained of. Without a written charge, EEOC will ordinarily not act on the complaint. Charges under Title VII, the ADA or GINA must be sworn to or affirmed (either by using this form or by presenting a notarized statement or unsworn declaration under penalty of perjury); charges under the ADEA should ordinarily be signed. Charges may be clarified or amplified later by amendment. It is not mandatory that this form be used to make a charge.

### NOTICE OF RIGHT TO REQUEST SUBSTANTIAL WEIGHT REVIEW

Charges filed at a state or local Fair Employment Practices Agency (FEPA) that dual-files charges with EEOC will ordinarily be handled first by the FEPA. Some charges filed at EEOC may also be first handled by a FEPA under worksharing agreements. You will be told which agency will handle your charge. When the FEPA is the first to handle the charge, it will notify you of its final resolution of the matter. Then, if you wish EEOC to give Substantial Weight Review to the FEPA's final findings, you must ask us in writing to do so <u>within 15 days</u> of your receipt of its findings. Otherwise, we will ordinarily adopt the FEPA's finding and close our file on the charge.

### NOTICE OF NON-RETALIATION REQUIREMENTS

Please **notify** EEOC or the state or local agency where you filed your charge **if retaliation is taken against you or others** who oppose discrimination or cooperate in any investigation or lawsuit concerning this charge. Under Section 704(a) of Title VII, Section 4(d) of the ADEA, Section 503(a) of the ADA and Section 207(f) of GINA, it is unlawful for an *employer* to discriminate against present or former employees or job applicants, for an *employment agency* to discriminate against anyone, or for a *union* to discriminate against its members or membership applicants, because they have opposed any practice made unlawful by the statutes, or because they have made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under the laws. The Equal Pay Act has similar provisions and Section 503(b) of the ADA prohibits coercion, intimidation, threats or interference with anyone for exercising or enjoying, or aiding or encouraging others in their exercise or enjoyment of, rights under the Act.

## EXHIBIT LIST TO SUPPORT COMPLAINT: BREWER VS AFFINITY DEVELOPMENT GROUP

| File Page # | Section# | Description of Exhibit | TOTAL PAGES |
|---|---|---|---|
| 2 | 9A | 8/29/2019 Tri- Staff Molly Whalen | 1 |
| 2 | 9A | 9/26/18  Tri-Staff Offer Letter | 2 |
| 2 | 9A | 9/606/2018 Employment Ref. Charles Anderson; "relevant skills" | 1 |
| 3 | 11 | 10/08/18 Training schedule –see bottom " After the end of 9 weeks" | 1 |
| 3 | 13 | Any Maurice evidence | |
| 3 | 1A | 12/06/18 'Updated territory 13 more WH's + Team allocation | 2 |
| 4 | 14 | Low post trip evals – 12am entry deadline | |
| 4. | C1 | 5pm deadline extension | |
| 4 | C1 | Pretrip 3wk vs 1 | |
| 4 | C1 | 12/19/18 Unsafe hours: Anderson Tow 4am – "I made it in @ 5am | 2 |
| 4 | 14D | 10/25/2018 Fletcher School related photos + Hailey email | 4 |
| 4 | 14F | Hired to cut costa Fletcher email | |
| 5. | I | 11/29/18 – Compere/Son Text "I'm concerned w how ur son might perceive my presence" | 1 |
| 5. | L,M | 5/30/2019  "This is going to make you say Whaaa?!" Employee Call Monitoring policy | 2 |
| 5 | N | "limit interruptions in our day by eating while driving; groceries | |
| 6 | O | Employee Counsel/PIP with Brewer's response | 6 |
| 6 | O3 | 2ND PIP affirms the 1st removed LB negs | |
| 6 | o6 | Costco praise + Special invite to speak & lunch with managers | |
| 7 | O5 | LB resume / work background | |
| 7 | O7 | Pip removed proof | |
| 7 | 15 | FY19 Travel Ban Calendar | 1 |
| 7 | C | "Yank around w on/off travel schemes" – email | |
| 8 | D | PUBLICLY & FALSELY ACCUSED OF CHEATING | |
| 8 | E | Brewer's Highest performance #'s, for 3 months! | |
| 8 | F | RV ROADSHOW SABATOGE | |

| 8 | G | Laura Fletcher sabotages Brewer's work while she's on the road (Lake Zurick) | 1 |
| 9 | I | April 2019 grouping: Kailyn B. "spy's & lie's" for mgt; hours late, lazy & bails early "vacation" for her but real work for me. | 6 |
| 9 | L | April 2019 emails = proof of denied essentials: clothes, biz cards, Q-drive access | |
| 10 | 16 | May 8,2019: LB in the Dakotas & MN, ADG plots ultimate revenge to fired her the day she returns | |

FYI:

- Items in gray are files that are pending upload or re-work of image quality

- MORE TO COME – must upload in small batches due to email restrictions

2

Case: 1:21-cv-06580 Document #: 1 Filed: 12/08/21 Page 31 of 62 PageID #:31

## Marketing Support Representative opportunity

From: Molly Whalen (mwhalen@tristaff.com)

To: lisalorene2000@yahoo.com

Date: Wednesday, August 29, 2018, 05:01 PM CDT

Hi Lisa,

I hope this message finds you well. I reviewed your profile and believe you may have interest in hearing about this opportunity. My partner, Jill Martinelli and I are conducting a search for a Warehouse Marketing and Support Representative position. This position would be 50% travel and 50% telecommute. The travel would consist of visiting 2-3 client locations per day within the states of IN, ID, OH, KY, MN, SD and ND twice a year.

Our client establishes marketing campaign programs with industry-leading companies. The Warehouse Marketing and Support Representative supports their territory through a combination of face to face visits, maintenance of all marketing material and continual remote employee support.

This position will require excellent communication and presentation skills. They are responsible for educating key warehouse personnel on the value the program delivers to both their membership and to the bottom line.

If you are interested, please let me know a few windows of time when you can be available for 20-30 minutes for an initial exploratory call.

Thank you,

Molly Whalen

Recruiter / Sourcer | TriStaff Group

(858) 597-4000 ext.299 Work | (760) 877-8230 Cell | mwhalen@tristaff.com



LinkedIn

## FW: Offer of Employment for WMS Visitor - Lisa Brewer

From: Jill Martinelli (jill@tristaff.com)

To: lisalorene2000@yahoo.com

Date: Wednesday, September 26, 2018, 02:06 PM CDT

HI Lisa – Here you go!  Congratulations!!!!

Please read the email thoroughly – there is some important benefits information for you....

Please call me if you need anything –

Jill

**From:** Trish Templeton [mailto:ttempleton@affinitydev.com]
**Sent:** Wednesday, September 26, 2018 12:00 PM
**To:** Jill Martinelli
**Subject:** Offer of Employment for WMS Visitor - Lisa Brewer

Hi,

Affinity Development Group is pleased to present Lisa Brewer with the Verbal offer of employment for our WMS Visitor position to be remotely based out of her home in IL.   The proposed start date is Monday, October 8, 2018 to be scheduled in San Diego, CA for New Hire Orientation with HR and on-site training with Beth Chaponis and Tammy Compere.  The Annual Salary is $50,000 per year with Benefits offered the 1st of the Month after her start date (November 1, 2018).

A copy of our Benefits Guide for 2018 is attached for her review.   Please note we will be changing our Medical and Dental carrier in 2019 to a National Health Plan and she will be able to enroll again for the 2019 new benefits.

If she accepts, please have her sign the attached ADG Background Consent Form and we will run her background accordingly.   Upon confirmation that her background is clear, we will finalize the offer with a written letter and coordinate her travel to SD for her first day.

We look forward to welcoming Lisa to the Costco Auto Program Team!

Regards,

**Trish Templeton**

Human Resources Director

**Affinity Development Group**

10251 Vista Sorrento Parkway, Suite # 300

San Diego, CA  92121

Phone # (858) 777-5174

Fax # (858) 777-5174

ttempleton@affinitydev.com

https://www.linkedin.com/pub/trish-templeton/1/810/4a7

 2018 ADG Benefits Guide.pdf
5.9MB

 ADG_OOS PPO PPT_2017-2018.pdf
2.7MB

 4. ADG Background Consent Form.pdf
88.8kB

11/27/21, 4:54 PM                    (2,659 unread) - lisalorene2000@yahoo.com - Yahoo Mail

# Re: Employment Reference Request

From:   Charles Anderson (charles.anderson.gr@gmail.com)

To:     lisalorene2000@yahoo.com

Date:   Thursday, September 6, 2018, 04:20 PM CDT

I would be happy to be a reference.

On Thu, Sep 6, 2018 at 4:00 PM Lisa <lisalorene2000@yahoo.com> wrote:

Hi Charles,

I'd like to use you as a work reference.  I'm being considered by a recruiter for a marketing position that would require me to travel to across the midwest to educate Costco employees on various programs, answer questions and maintain good relationships.  No selling is required and what she feels the client will be focused on communication skills, the ability to present information well and demonstrated experience with C-levels etc (which I have plenty of).
I shared with her that being successful in sales require these same skills, especially as it relates to understanding speaking to fast changing technologies.

I included a copy of the reference letter you wrote and sent to me on March 19th.

Her name is Molly Whalen with TriStaff Group.  You may see a call from one of these numbers:
(858) 597-4000 ext.299 Work | (760) 877-8230 Cell

Thank you!

Lisa Brewer

PS.  Happy Thursday  : )

| Lisa Brewer: Week 1 | Monday, October 8, 2018 | Tuesday, October 9, 2018 | Wednesday, October 10, 2018 | Thursday, October 11, 2018 | Friday, October 12, 2018 |
|---|---|---|---|---|---|
| 9:00-12:00 | 10AM-12PM Meet with Trish Templeton/HR | Training: Kaylin Duggins, WMS Assistant Manager | Training: Vehicle Display Schedules | Training: Vehicle Display Schedules | Training: Vehicle Display Schedules |
| 12:00-1:00 | Lunch with Yusen Torres | Lunch | Lunch | Lunch | Lunch |
| 1:00-5:00 | 1 -2pm Yusen Torres Introduction to Office/Walk around Office   2pm - 5pm Visit 2 WHS w/Yusen | Training: Vehicle Display Schedules | Training: Vehicle Display Schedules | Training: Vehicle Display Schedules | Travel Home Sweet Home |

| Lisa Brewer: Week  2 | Monday, October 15, 2018 | Tuesday, October 16, 2018 | Wednesday, October 17, 2018 | Thursday, October 18, 2018 | Friday, October 19, 2018 |
|---|---|---|---|---|---|
| 9:00-12:00 | | | Chicago Training: Tammy Compere, Director | Training Session - CAP Program/PS/P&S/Crystal Reports/Allocations | Visit a couple of warehouses (just to observe and walk through a visit) | Training Session - Travel and Trip Planning | Training Session - Whs Visit/WMS Post Visit |
| 12:00-1:00 | Office Set Up/WMS Scheduling | Home Office/WMS Sheduling | | Lunch | Lunch |
| 1:00-5:00 | | | | Training Session - Whs Visit Prep/Whs Visit | Prep/Paper work for MI |

| Lisa Brewer: Week 3 | Monday, October 22, 2018 | Tuesday, October 23, 2018 | Wednesday, October 24, 2018 | Thursday, October 25, 2018 | Friday, October 26, 2018 |
|---|---|---|---|---|---|
| 9:00-12:00 | Training: Warehouse Visits with Laura Fletcher (Fly to MI) | NOTE: Lisa Brewere to Prepare Paperwork for ALL Visits | Training: Warehouse Visits with Laura Fletcher in MI | Training: Warehouse Visits with Laura Fletcher in MI | Training: Warehouse Visits with Laura Fletcher in MI | Training: Warehouse Visits with Laura Fletcher in MI |
| 12:00-1:00 | | | | | |
| 1:00-5:00 | | | | | |

| Lisa Brewer: Week 4 | Monday, October 29, 2018 | Tuesday, October 30, 2018 | Wednesday, October 31, 2018 | Thursday, November 1, 2018 | Friday, November 2, 2018 |
|---|---|---|---|---|---|
| 9:00-12:00 | Home Office | Home Office | Home Office | Warehouse Visit Prep S IL (Prepare and Print Paperwork) | Home Office | Warehouse Visit Prep - S IL (Prepare and Print Paperwork) | Home Office | Warehouse Visit Prep - S IL (Prepare and Print Paperwork) |
| 12:00-1:00 | Lunch | Lunch | | | |
| 1:00-5:00 | Home Office | Home Office | | | |

| Lisa Brewer: Week 5 | Monday, November 5, 2018 | Tuesday, November 6, 2018 | Wednesday, November 7, 2018 | Thursday, November 8, 2018 | Friday, November 9, 2018 |
|---|---|---|---|---|---|
| 9:00-12:00 12:00-1:00 1:00-5:00 | Shadow Chris Lanciualt | S IL | Shadow Chris Lanciualt | S IL | Shadow Chris Lanciualt | S IL | Shadow Chris Lanciualt | S IL | Shadow Chris Lanciualt | S IL |

| Lisa Brewer: Week 6 | Monday, November 12, 2018 | Tuesday, November 13, 2018 | Wednesday, November 14, 2018 | Thursday, November 15, 2018 | Friday, November 16, 2018 |
|---|---|---|---|---|---|
| 9:00-12:00 12:00-1:00 1:00-5:00 | Home Office | Expense Report | Home Office | Post Visit Follow Up S IL | Home Office | Post Visit Follow Up S IL | Home Office | Post Visit Follow Up S IL | Home Office | Post Visit Follow Up S IL |

| Lisa Brewer: Week 7 | Monday, November 19, 2018 | Tuesday, November 20, 2018 | Wednesday, November 21, 2018 | Thursday, November 22, 2018 | Friday, November 23, 2018 |
|---|---|---|---|---|---|
| 9:00-12:00 12:00-1:00 1:00-5:00 | Home Office | Prep IL North WI | Home Office | Prep IL North WI | Home Office | Prep IL North WI | Thanksgiving | Off | Thanksgiving | Off |

| Lisa Brewer: Week 8 | Monday, November 26, 2018 | Tuesday, November 27, 2018 | Wednesday, November 28, 2018 | Thursday, November 29, 2018 | Friday, November 30, 2018 |
|---|---|---|---|---|---|
| 9:00-12:00 12:00-1:00 1:00-5:00 | Lead Viist | IL North WI Tammy Shadow | Lead Viist | IL North WI Tammy Shadow | Lead Viist | IL North WI Tammy Shadow | Lead Viist | IL North WI Tammy Shadow | Lead Viist | IL North WI Tammy Shadow |

| Lisa Brewer: Week 9 | Monday, December 3, 2018 | Tuesday, December 4, 2018 | Wednesday, December 5, 2018 | Thursday, December 6, 2018 | Friday, December 7, 2018 |
|---|---|---|---|---|---|
| 9:00-12:00 12:00-1:00 1:00-5:00 | Home Office | IL North WI Post Visit Work | Home Office | IL North WI Post Visit Work | Travel to San Diego for Holiday Party | Travel to San Diego for Holiday Party | San Diego Holiday Party |

Note: After Week 9 we will guage Lisa's' comfort level with the WMS Visitor role. After the week 9 visits, Tammy will guage on requirement for more training. Or, moving forward with indepenent visits.

Lisa's Territory Assignments will be:
S IL
IL North WI
MN ND SD
ID MT

RingCentral Extension :5938
RingCentral Direct Line: 858-943-5938
lbrewer@costcoauto.com

THIS

11/2018

PASSED IN WI

PRE-CANADA ALLOCATIONS

**OLD TERRITORY BREAKDOWN NM- 12/2018** ←

(Left dept this week older) →

**54** ⊟ Bill Van Der Woude
- ⊞ CA Sacramento + North Bay 13
- ⊞ CO 14
- ✳ ⊞ IN-KY-S.OH 13
- ⊞ TX North - OK - Wichita 14

**27** ⊟ Christopher Lanciault MGR
- ⊞ GA 13
- ⊞ IA-KS-MO-NE 14

**51** ⊟ Danny Boll "MR. POPULAR" Brazilian ♂
- ⊞ AZ 15
- ⊞ CA L.A. (West) 13
- ⊞ CA O.C. - Las Vegas 15
- ⊞ NM-Tucson-W TX 8

**34** ⊟ Dianna Minniss (Knee injury/leave)
- ⊞ UT 11
- ⊞ VA North-S.MD-DC 11
- ⊞ WA South 12

**48** ⊟ Gillian Newbery
- ⊞ CA L.A. (East) 12
- ⊞ CA Riverside 12
- ⊞ MA-NH-VT-CT 12
- ⊞ OR North + Vancouver 12

**50** ⊟ Kailyn Bresnahan
- ⊞ AL-LA-TN 11
- ⊞ FL South 14
- ⊞ NYC-Long Island 13
- ⊞ NY-N.NJ-S.CT 12

**47** ⊟ Kori Almond
- ⊞ CA Central Valley 14
- ⊞ CA L.A. (North) 11
- ⊞ CA San Jose 13
- ⊞ OR South-N. CA-Reno 9

⊟ Laura Fletcher = 27
- ⊞ MI 15
- ⊞ OH - PA West 12

⊟ Leslie Hull = 29
- ⊞ FL North 12
- ⊞ TX Austin - San Antonio 7
- ⊞ TX Houston – Pharr 10

⊟ Lisa Brewer 49 +13 = 62 (+13=62)
- ⊞ ID-MT 9
- ⊞ IL North + WI 15
- ⊞ IL South 13
- ⊞ MN-ND-SD 12

✳ ⊟ Maurice Flanagan = (56)
- ⊞ NC-SC 14
- ⊞ NJ 14
- ⊞ PA East-DE-N.MD-S.NJ 14
- ⊞ VA South 14

⊟ Nicolas Bennison = 28
- ⊞ CA San Diego 14
- ⊞ HI 7
- ⊞ WA East 7

⊟ Trudy Fuller = 28
- ⊞ AK = 3
- ⊞ CA San Francisco 13
- ⊞ WA North 12

⊟ Yusen Torres = 4
- ⊟ PR
  - Caguas
  - Carolina
  - E. Bayamon
  - W. Bayamon

Total = 530

**Lisa Brewer**

**From:** Laura Fletcher
**Sent:** Thursday, December 6, 2018 3:20 PM
**To:** Lisa Brewer
**Subject:** Updated Territory - Use this version

| WMS Name | Region | Area/State | Warehouse Count | Trip |
|---|---|---|---|---|
| Lisa Brewer | MW | MN-ND-SD | 12 | |
| Lisa Brewer | MW | IL South | 13 | |
| Lisa Brewer | MW | IL North + WI | 15 | |
| Lisa Brewer | MW | IN-KY-S.OH (BV) | 13 | |
| Lisa Brewer | NW | ID-MT | 9 | |
| Lisa Brewer | | Total | 62 | |

Lisa,

Here is your updated territory assignment. Please have your updated calendar to me by EOD 12/11/18.

Thanks,

**Laura Fletcher**
Warehouse Marketing Support
Costco Auto Program
lfletcher@costcoauto.com
(858) 777-5158 Office/Fax

1

## Fwd: Anderson Towing Text Message - Rental issue

From: Lisa Brewer (LBrewer@CostcoAuto.com)

To: lisalorene2000@yahoo.com

Date: Tuesday, January 1, 2019, 03:08 AM CST

**From:** Lisa Brewer <LBrewer@CostcoAuto.com>
**Date:** December 19, 2018 at 4:06:46 AM CST
**To:** Laura Fletcher <LFletcher@CostcoAuto.com>, Tammy Compere <TCompere@CostcoAuto.com>, Andrea Ramirez <aramirez@affinitydev.com>
**Subject:Anderson Towing Text Message - Rental issue**

ANDERSON TOWING - BILLINGS will jump start your Grand Cherokee located at 2010 Overland Ave, Billings. Expect arrival within 60 min; if necessary they can be reached at 8643544666. Visit www.roadsideconnect.com/?id=MjI2MjA0MzQ3NDo4NTg5NDM1OTM4 to confirm your vehicle's location and get additional service provider details. To correct any information, please call us back. Message & data rates may apply. Reply STOP to discontinue further messages.

Sent from my iPhone

## Fwd: Made it to hotel

From: Lisa Brewer (lbrewer@costcoauto.com)

To: lisalorene2000@yahoo.com

Date: Tuesday, January 1, 2019, 03:08 AM CST

**From:** Lisa Brewer <LBrewer@CostcoAuto.com>
**Date:** December 19, 2018 at 5:19:10 AM CST
**To:** Laura Fletcher <LFletcher@CostcoAuto.com>, Tammy Compere <TCompere@CostcoAuto.com>, Andrea Ramirez <aramirez@affinitydev.com>
**Subject: Made it to hotel**

Sent from my iPhone



Company
Iphone
Screen
Shot

Date Stamp
"School"





## Hailey Y Fletcher AOL email 10262018

From:  Lisa Brewer (LBrewer@CostcoAuto.com)

To:  lisalorene2000@yahoo.com

Date:  Wednesday, January 2, 2019, 12:42 AM CST

**From:** Hailey [mailto:haileyyfletcher@aol.com]
**Sent:** Friday, October 26, 2018 6:50 AM
**To:** Lisa Brewer <LBrewer@CostcoAuto.com>
**Subject:** Follow Up

Hi Lisa! Just wanted to once again say thank you so much for meeting with me yesterday. I really appreciate you helping me out for my marketing class, as well as just talking about life in general with me. My mom showed me your email with the 2 questions you revised, so I will be sure to use those. I attached a video of my favorite skaters (Tessa Virtue and Scott Moir) below, I hope you enjoy watching them as much as I do☺

Tessa Virtue and Scott Moir: Free Dance Pyeong Chang Olympics 2018 (https://youtu.be/wOEKdWrtz6U)

Best Regards,

Hailey Fletcher

Verizon LTE    1:41 PM

TC

Tammy

Or just give u silent support

Yes of course you are very welcome

I know you are being very kind to include me but this is really exceptional so I really want to be sure you want the company vs being polite - Im ok either way 😊

We can talk more tomorrow if u like. I'm concerned w how ur son might perceive my presence and I don't want u to be caught off guard with a potential reaction or not be prepared for what could come at you. There's only one goal that matters.

Thu, Nov 29, 9:59 AM

iMessage

GREG: THIS IS GOING TO MAKE YOU SAY WHAAAA?!

From:  Lisa (lisalorene2000@yahoo.com)

To:  ge~~~~~~~~

Date:  Thursday, May 30, 2019, 12:11 AM CDT

I should've focused on this email more.  Just look at the highlighted sections and the comments Tammy puts next to them.
Shows she is a COMPLETE whack job for listening to a private conversation she knows absolutely nothing about.  She contorts them into negative performance statements.

"I tried 3 times..." was YOU on the phone telling me you tried calling Lynn for me because my personal phone was lost.  She turns this into a basis for saying I did not met technology standards!!!!

I never realized this before now.  WOW.

Lisa


----- Forwarded Message -----
**From:** Lisa <lisalorene2000@yahoo.com>
**To:** Lisa Lisa <lisalorene2000@yahoo.com>
**Sent:** Thursday, May 30, 2019, 12:03:17 AM CDT
**Subject:** TAMMY LISTENS AND TWISTS MY CALLS

----- Forwarded Message -----
**From:** Tammy Compere
**Sent:** Thursday, January 3, 2019 3:32 PM
**To:** Lisa Brewer <LBrewer@CostcoAuto.com> **Cc:** Laura Fletcher <LFletcher@CostcoAuto.com>
**Subject:** FW: RE: Lisa Brewer | Employee Counseling 12.31.18 Attached - "Missing attachments"

Lisa,

Laura and I have pulled the following calls and listened them. I am finding that these calls are not indicating, or having any relevance to the Counseling Document. We have spent valuable time pulling these calls, and will not pull any more until you can give us some specifics, or relevance. We have been more than gracious with complying to your requests.

Dec 7 Call #1 – Unknown Caller? Not sure of the relevance of this call.
Dec 7 Call #2 –  San Diego CAB. Not sure of the relevance of this call.
Dec 7 Call #3 - San Diego CAB. Not sure of the relevance of this call.
Dec 7 Call #4 - San Diego CAB. Not sure of the relevance of this call. NOTED: High raised voice and end of call.

Dec 7 call Michael Harvard – Leaving in 20 Minutes. Not able to print. He stated he knew from call from Ayesha and was heading down in a minute to fix it.      NOT sure of the relevance to our document.

Nov 26 Call#1 – "Mary form Costco. *Cannot find your phone. NO android phone.* An LG been there for weeks. Nothing new." ---- *Proves relevance to NOT MET technology standard.*

Nov 26 Call#2 –  Assuming this is Greg…"I tried 3 times nobody answered it…." --- Call Proves relevance to NOT MET technology standard. Lack of Organization. Mentions she is "fried, tired….."

Dec 18 has no calls (see screen shot below)

Why would a phone call to Greg (who doesn't work for our company) have any merit regarding your unmet expectations? I am requesting  specifics in relation to the numbered items on the counseling form. The time we spent pulling these calls clearly indicates and verifies our reason behind a "Specific Request".

For example, I am pulling this from the counseling form:

"11/6 and 11/7 Chris called (recorded calls attached) Lisa from parking lot of warehouse where she is been informed verbally to park next to tire center and meet with Chris. Chris asks where Lisa is and she says and the warehouse but she does not attempt to park or meet in the designated area."

Based on this statement above in quotes pulled from the counseling form, we know that the call that we included relates to this particular unmet expectation. The way your request is written below does not have any merit to specifics on the document. The calls we pulled attached to this document requested by you do not have any relevance.

Moving forward, please review the counseling form, input any comments, and submit per agreed upon time frame.

Tammy

**From:** Tammy Compere
**Sent:** Thursday, January 3, 2019 12:16 PM
**To:** Lisa Brewer <LBrewer@CostcoAuto.com>
**Cc:** Laura Fletcher <LFletcher@CostcoAuto.com>
**Subject:** RE: RE: Lisa Brewer | Employee Counseling 12.31.18 Attached - "Missing attachments"

Lisa,

I am happy to pull calls. I need specific date and times. All of our calls are recorded individually. We have to locate them, and then, download them.

No one has direct access to listen to all of their calls. Mangers have to pull the team members call and send the specific calls requested. This is even true for call center employees.

Tammy

**From:** Lisa Brewer
**Sent:** Thursday, January 3, 2019 12:04 PM
**To:** Tammy Compere <TCompere@CostcoAuto.com>
**Subject:** RE: RE: Lisa Brewer | Employee Counseling 12.31.18 Attached - "Missing attachments"

Hi Tammy,

**Thank you for sending this. It was actually nice hearing some of these early conversation moments again.**

**Would it possible for you to let me access my own recorded calls** through the completion date tomorrow? There's some conversations I recall that don't have emails I can reference **that would be helpful in clarifying some misunderstandings.** Since these are conversations I led or participated in, there would be no issue of privacy to hinder access.

Please let me know, thanks!

Lisa Brewer
Costco Auto Program
Warehouse Marketing Support Visitor
(858) 943-5938
lbrewer@costcoauto.com

 Dec7Call#1.mp3
87.2kB

 Dec7Call#2.mp3

38.9kB

Dec7Call#3.mp3
75.4kB

Dec7Call.mp3
136.7kB

DecCall#4.mp3
389.6kB

Nov26thCall#1.mp3
153.9kB

Nov26thCall#2.mp3
1.5MB



**AFFINITY**
DEVELOPMENT
**GROUP**

Employee Call Monitoring and Recording Agreement

As an employee of ADG, I recognize that my incoming and outgoing phone calls and related computer activity will be recorded and may be monitored for quality and training purposes and I give my permission for such recording and monitoring.

Also, it has been explained to me that it is the policy of ADG to immediately refrain from monitoring a live or recorded call when it is determined to be of a personal nature. Any recorded calls selected for monitoring which are found to be of a personal nature will be removed from the database.

X TAMMY COMPERE VIOLATES THIS POLICY OFTEN EVIDENCED BY RECORDINGS SHE EMAILED ME OF MY SPOUSE & I ON 1/31/19 that was recorded on 11/26/2018!

Employee Name: _LISA BREWER_
Print

Signature: _Lisa Brewer_ Date: _10/9/18_



**EMPLOYEE COUNSEL RESPONSE – LISA**

BREWER 1/4/2019

The information contained in this statement is based upon the facts as **Trainee** knows them and reserves the right to amend this statement in the event additional relevant information is discovered. This response does not purport to be exhaustive and Trainee reserves the right to elaborate on and add to her position as may be deemed necessary.

1. Lisa does not meet expected time lines in regards to responding to manager's emails and taking action according to ADG Company and WMS Department Standards.
* Lisa was provided a written manual with signed receipt with specific expecations.
*Management failed to provide copy of signed manual document with this briefing and therefore cannot be specifically addressed as of this writing. I can attest that any documents signed prior to hire date of 10/8/2018 were never discussed upon hire and is rendered irrelevant. Some exception includes the Travel & Expense policy that was never discussed & acknowledged until November 2018.*
* Email sent 11/29 to Lisa directly: asking for travel request and Plan of Action (POA) for ID/MT warehouse visits 16 days before trip is to start (company standard minimum 21 days before trip start). (email attached) No reply, no immediate action. 12/3 travel request and POA were emailed to Laura allowing only 14 days for trip arrangements.
*I do not have evidence of such email. If it was sent on 11/29, why doesn't management comply with the "21 day company standard" by sending it late at the onset? Emails reflect that Trainee submitted Laura draft POA's well in advance of this date. Furthermore, the week prior management "hijacked" Trainee's calendar with unplanned, unannounced low priority administrative duties. On 11/29, Trainee was out of office traveling for the week with limited to no access to communications. This was reflected in CAP and Outlook out of office transmissions.*
* 12/15 Saturday Lisa called (call attached) Laura to review a POA for MN/ND/SD territory.
*I do not know why this is included. Management failed to provide 12/15 audio file. It validates Trainee in next section about POA being late. Trainee was never informed that it is a violation to call her manager over the weekend. Compere cites "this is not a traditional 9 to 5 job (see 12/18 MN/ND/SD conference call)." In an email dated 12/31/18 with cc: to HR she quotes: "Your manager is available for assistance at all times for any questions and concerns that arise that may not be in the basic WMS Manual."*

o WMS Standard for a full week of warehouse visits is 15 warehosues with an average of 3 warehouse visits per day. Lisa expressed concern of following previous WMS Visitor past POAs for MN/ND/SD and did not feel 12 warehouses (which is below the 15 warehouse visit standard) could be completed in 5 business days without even attempting recommnedations from prior WMS travel POAs for this area. Lisa submitted (email attached) POA and travel request 12/16 requesting 6 days of travel. Laura created 2 POA's for MN/ND/SD area with 5 business days. Tammy and Laura had a coaching meeting with Lisa and explained they do not want her to travel

1

on Sunday if not necessary and Sunday travel would not be necessary for the MN/ND/SD trip and review with Lisa the 2 POA's with 5 day business travel. Lisa expressed in a loud tone and stated that "feels she would be "too tired" to complete the visits in a 5 day trip". At the end of the call Lisa is instructed to choose from the 2 POA's and submit to Laura immediately.

*Management attempts greatly to mislead HR. Trainee has never heard of a 15 WH/3 per day WMS standard prior to this writing. Does this standard apply only to Brewer or all WMSV's? When was this policy implemented? How is this possible when some regions lack the WH quantities to support this? System data is not reflective. Furthermore, relevant emails detailing what really happened in the development of the MN/ND/SD POA has been omitted. Trainee submitted a 6 day plan modeling that of Danny Boll using information provided by Fletcher. Fletcher rejected Brewer's POA in order to "cut costs" (documented). Trainee was coerced to attempt a POA that was untested: A fully stacked flight/WH/driving day in a new area, followed by excessive driving, in the height of winter – with a goal to complete in less days than Laura or Danny had ever done in warm weather as veterans. The fact that Laura submitted 2 brand new POA's on 12/18 gives validity to Trainee concerns. We would ask HR to play the recorded conference call from the afternoon of 12/18/18. You will not find "Lisa expressed in a loud tone and stated "feels she would be "too tired" to complete the visits in a 5 day trip." Why was this extremely relevant audio file excluded?*

o      12/20 4 days late per ADG standards to turn in travel, Lisa submitted a 5 day POA and travel request to Laura. *Trainee submitted valid POA's ahead of deadline repeatedly.*
•      Expected WMS Standard for all WMS due date for AAG AAP hours sent via Email on a monthly basis and expectations for all WMS are set monthly to meet expected due date. If not met, email or phone counseling has taken placing with other WMS in the department. On 12/17 and email was to the WMS team: requesting AAG/AAP hours turned in EOB 12/19/18 (email attached).
o      12/20 1 day late without notice Lisa submited AAG/AAP hours. She did not follow directions of no hours for MOI and adds in 50 hours for MOI even though specific instuctions that there were no MOI hours for this month. *This is not correct.*
•      11/5-11/9 Lisa shadowed WMS Manager, Chris Lanciault in S.Illinois territory. Parking at warehouse near tire center is the WMS Standard for all new hires and was explained verbally to Lisa during shadowing with Yusen, Laura, and also at start of shadow week with Chris. End of week expectation of holding a conversation with warehouse management.
o      11/6 and 11/7 Chris called (recorded calls attached) Lisa from parking lot of warehouse where she is been informed verbally to park next to tire center and meet with Chris. Chris asks where Lisa is and she says and the warehouse but she does not attempt to park or meet in the designated area.
*Why is this being introduced for the first time with negativity, nearly 2 months after the occurrence? Where are the emails and phone calls to show that the Trainee was informed of said "infraction" at the time? Both calls indicate Trainee waited and or looked for Chris at the Tire Center for a prolonged period. In the first call you can hear Brewer states "I just parked in back, I went around the lot a couple of times, I didn't see you." The "back" clearly indicates she was in the area of the Tire Center. There was cordial agreement. The 2nd call (23 seconds) indicates she waited a long time at the Tire Center without him seeing her either. Other factors may be involved here unique to Chris since this did not occur on shadow trips with any other manager: Yusen, Laura and most recently Tammy (see attachment 11/5)*

2. Lisa does not meet the job requirement in regards to use of technology with office setup, IPhone capability, required paperwork printing, and use of navigation equipment. All of these are provide by ADG and are required for a successful WMS Visitor in the office and out in the field

for warehouse visits.

• 10/15-10/16 Week 2 planned time on her 9 week training plan (Successful standard WMS Training plan is 8 weeks) to set up remote office for Lisa. *No timeline was ever communicated as to when and what defines complete remote office setup. Some discretion was granted as to use of some equipment such as land line telephones. Trainee was never offered IT Support or follow-up confirmation. Attached emails show printer problems were the direct result of IT failures (download software blocked, no USB printer cable provided – Trainee had to self-source). Printer install was completed on 10/31 with praise "good job! Thanks for all your effort" – clearly acknowledging abnormal challenges. Trainee completed work tasks successfully despite conditions, including shadow trip to Michigan 10/22 – 10/26 (also met with high praise). With such obvious contradictory evidence, why is management making such a blatantly false assertion – now?*

o 12/3 during an online recorded meeting with Laura and Tammy it is seen Lisa has not setup dual monitors in her remote office for daily business use. *False. Please provide screenshot evidence*

• 10/23-10/26 Shadowed Laura on warehouse visits in Michigan.

o After 2 days of working together Laura observed that Lisa did not know how to text, use applications, and navigation on a company issued IPhone. Laura coached and review of the required use of the IPhone for day to day company business. Laura explained and allowed Lisa to use texting, weather application and map application during the reaminder of the shadow training. At end of week, Laura suggested to Lisa to take a course on how to use IPhone at a local Apple store, Lisa has not attempted to further her knowledge of the IPhone. *Job description received does not reflect nor was Brewer ever informed pre-hire that Apple IPhones would be issued or required. During first week in CA office 10/8 – 10/12, no training was provided. She was given a locked Apple phone just prior to her departure with no instruction manual. It is management responsibility to provide appropriate training. Please provide record of completed training. If Laura provided training as described, there would be no need to suggest taking a course at a local Apple store! Laura showed trainee job specific IPhone functions such as using Box and Concur for completing expense reports only. As an admitted Android devotee, trainee has demonstrated considerable knowledge and mastery of the IPhone with ongoing use.*

• 11/6 during S IL warehouse visit training, Chris calls Lisa (recorded calls attached) to advise her of directions to warehouse. Lisa is hesitant of Chris's directions and admits she does not know where she is and may have not heard her GPS. *Why is this here? Call clearly indicates by Chris that the GPS malfunctioned and gave both employees incorrect navigation. Trainee cites that she "unplugged" and pulled over to take his call.*

o 11/7 druing S IL warehouse visit trianing, Chris calls (recorded call attached) Lisa to verify GPS instructions to warehouse. She mentions she did not see a text and does not know how check to see if she received a text message from him. Due to diminishing time in the day, Chris explains he will show her later. *Management failed to provide audio file describing text message event.*

• 11/26-11/30 Tammy shadowed Lisa (Lisa took point on visits which is the standard for WMS training week 8) on warehouse visits in Wisconsin and noted Lisa is had issues navigating to warehouses and hotel.

o 11/27 Lisa drove to incorrect hotel in Green Bay, WI and tried to check in before realizing she was at the wrong location. Tammy witnessed in person throughout week she had extreme difficulty trying to find the warehouses and hotels. *Management exaggerates. This was a malfunction of the Hilton Hotel app that either Chris or Laura loaded on her phone and suggested she use. This is one of many examples of conflicting direction & inconsistent feedback*

*provided across the new hire training window (see IPhone screenshot of icon that did not come preloaded – what was that about failure to further IPhone knowledge?)*

o        11/27 Tammy called Lisa (call attached) to discuss meeting for dinner.  Lisa expressed verbal excitement, made excuses, and refused to go to dinner with Tammy.

*This assertion may prove to be the most embarrassing yet for ADG.  Facts show that Lisa had fallen severely ill with the flu.  Lisa cites on the call that she believes she picked it up over the Thanksgiving holiday shopping – "touching things."  She specifically states "I would feel awful if I contaminated you [Tammy] or others" – [Costco employees] etc.  At various places (see 1:06, 1:17 +), Tammy states "I understand if you're not feeling well."  If she understood, why is this listed here as a complaint?  Starting at 1:27 Tammy admits that no time had been allowed for lunch and incessantly blames the trainee for the direction of the training  At 2:00, Lisa offers to "still do the dinner" so there is no refusal.  Lisa was not allowed appropriate Sick/Meal time and was gracious under fire, thus the apology (a la Harry Whittington to Dick Cheney in 2006).*

o        11/30 Lisa gave verbal instructions to Tammy next warehouse to visit is Lake in the Hills.  After realizing instructions were not correct she called Tammy (recorded call attached) to advise her.

*Management failed to provide copy of recorded audio.  If full call (not a snippet) is reviewed, you will find that trainee detected and owned her mistake so quickly, that parties had not yet started driving away from WH.  Trainee did the right thing!  A simple reading error.  Numerous examples of far more egregious errors made by both managing parties (not in training) can be provided if warranted.*

•        12/15 (Saturday) Lisa sent email (attached) to Laura informing her she needs to purchase ink again for her printer and as Laura previously advised her to purchase XL cartridges in past verbal conversations.  *Laura never previously advised trainee to purchase XL cartridges.  Laura failed to address this and previous ink shortage concerns, requiring escalation to higher management.*

o        Lisa stated they do not make them for her printer.  12/17 Lisa forwarded same email to Tammy.  Tammy explained they do make them for her printer and send pictures of XL cartridges that are available for her printer.  11/2 Laura called to review status of printing visit reports and advised Lisa on how to print documents successfully, tips on saving printing time and ink (recorded call attached).  *Please see attached email response from Tammy, full of obvious contradictions.  "WMS's all receive the same machine but different model numbers."  Tammy had to do research and suggested that the trainee "research her model number."  Why is any of this necessary if Company provided a machine that adequately meets the printing needs of its workers?  The printer came with no user manual and a specific set of ink.  It is unreasonable to expect anyone to think of using any other ink than the type provided.  As for the recorded call, I thanked Tammy for providing it.  It is 18 minutes of pure joy in how great Laura and I worked together.  It was the inspiration for my 1/3/2019 request for more audio files from Tammy (she ultimately did not provide).  The call gives full support to the concerns cited by Trainee and is a further example of how well she was meeting "job requirements in regard to use of technology with office setup; required paperwork printing." Listen to:*
*6:50 Lisa – "let me get my list so we can establish the right way to do this going forward"*
*9:15 Laura – "Oh he's [Chris] got you printing lots of stuff!"*
*9:45 Laura -"Good question!"*
*12:46 Laura – "Awesome! Sounds like you're coming along really well – I mean that's amazing! That's a*
*LOT of printing"*
*13:52 Laura – "You're learning quick!"*

4

14:05 *Lisa – "Is there a way to do multiple prints? Met with "No" **only 1 page at a time***
15:15 to 15:30 – *Lisa "It sucks up paper (jams), wastes time and ink*
*Laura – "You're learning so quickly! THIS IS AWESOME! It's quite an experience. IT TAKES A LOT OF TIME*
17:36 *Laura – "Sounds good glad you're doing well. I'm happy you're learning this process*
18:34 *Laura – "Good job on the printing stuff – END OF CALL*

3. Lisa does not meet performance expectations for the position as a WMS Visitor. Tammy and Laura discussed in detail with Lisa during a Shadow review (attached) and expectations for future visits and overall performance. Written documentation of the Shadow Review (for N IL WI) sent via email for Lisa's records. *Contradicted by the comments in the previous section. Additional information pending*

•       WMS Performance Expectations are printed in written manual with signed receipt. *Management failed to provide copy of signed manual document with this briefing and therefore cannot be specifically addressed as of this writing.*

•       12/3 Tammy and Laura had an online coaching meeting with Lisa and go over Shadow review and the expectation below are set for being successful as a WMS:

o       Improving iPhone APP and technology use familiarity.

o       Improving Travel Request 3 Week Standard for WHS visit trips. Asked to turn in ID/MT. As of 12.3.18, no trip planned for 12.17.18 travel.

o       Improving overall warehouse photos. Taking before and after pictures to show work completed and all required photos taken with quality. Review photos before uploading to avoid uploading unnecessary photos ex: picture of floor, blurred images.
*Trainee was provided an improperly working company cell phone. The protective cover partially obstructs the camera lens. Management was made aware. IT department has not provided replacement*

o       Prepping with a written list prior to the visits of items of discussion which include dates, new upcoming events, and conversation highlights, emailed GM Holiday Event updates, or email questions/request. This includes printing/familiarizing herself with the Visitor Agenda.

o       Communicating responses to emails/phone calls promptly even if unable to give the correct response. Acknowledge you have received the email and are working on the request and/or ask for clarification. *Incorrect. Additional information pending*

4. Lisa does not adhere to ADG travel policy. This policy was provided and returned signed prior to Lisa's onboarding and start date. Contacting a manager for any travel change is ADG Standard policy.

•       11/4 Lisa returned rental car to alternate unplanned and manager unapproved location which incurred additional fees.
*Travel policy was never reviewed or specifically discussed with Brewer once hired (prior to written counsel, 12/3). Trainee cannot be held accountable to policies received during the recruitment process! Circumstances necessitated an alternate location for the pickup. The rental car was returned to the same location. This was a first time occurrence within the first month of employment. Trainee used best judgement & respect in not calling her manager on a Sunday evening. On page 1 of this briefing Trainee is criticized **for** calling her manager on Saturday afternoon 12/15. Which is it – call or not call? The conflicting messages are problematic.*

•       12/3 Lisa was given a Written Counsel on travel expenses (attached).
*Management failed to provide copy of written counsel travel expense attachment with this briefing and therefore cannot be specifically addressed as of this writing.*

5. Lisa does not adhere to WMS standard policy on documenting communication with a warehouse and/or dealer into ADG notes. Documenting communication is a continuous and

important standard that was reviewed again in person week 2+ and provided in the WMS training manual with signed receipt.

*Data shows that as a trainee Brewer meets and often exceeds note documenting standards as compared to veteran peers who are not dealing with a learning curve at the same time. Documents pending*

- 11/21 Lisa sent out emails to warehouses in WI/S. Illinois area to announce upcoming visits. No notes were entered in ADG. *Management failed to mention this as a required task at the time. Several email and phone conversations show Trainee concerns about the lack of disclosure. Tammy is documented citing "we didn't want to overwhelm you with everything upfront." Let me tell you, the behind your back-after the fact method doesn't work either in preventing "overwhelm."*

- 11/29 Lisa sent email follow up email (attached) to warehouse #1162 without entering notes and after Laura sends reminder to enter notes she does enter in ADG. *When did making a mistake during one's training period warrant being put on probation with the threat of termination? Isn't that why designation exists to differentiate someone who is trained versus someone who isn't?*

- 12/12 Lisa sent emails to warehouse in MT/ID area to announce upcoming visits and no notes were entered in ADG. *Management failed to mention this as a required task at the time. Several email and phone conversations show Trainee concerns about the lack of disclosure.*

*In closing, Lisa Brewer is highly qualified and has an exceptional work history meeting challenges. Her resume shows success in several diverse fields that includes extensive travel. Upon her hire she has been consistently introduced as "the perfect fit" – notably by Yusen, Tammy, Laura and Danny Boll. Chris Lanciault praised her email writing skills as "the best I've seen of any WMS Visitor." I have shown with just a few examples how the attached evidence meant to impugn Lisa Brewer actually shows her virtues. She has endured a number of questionable – potentially illegal work practices graciously and without complaint. Even today she remains a consistent, reliable performer unworthy of the criticisms leveled here. Now that such matters have been disclosed, a proper investigation as to the merits of the claims made here by both parties should be conducted for the best interests of all involved.*



## Lisa Brewer

| | |
|---|---|
| **From:** | Tammy Compere |
| **Sent:** | Friday, January 11, 2019 3:40 PM |
| **To:** | Lisa Brewer; Laura Fletcher |
| **Cc:** | Trish Templeton; Heidi Conaway; 'lisalorene2000@yahoo.com' |
| **Subject:** | RE: TRAVEL HOLD DUE TO SICK DAY REQUEST - Laura Fletcher 1/11/19 |

Lisa,

All decisions are based on your current Performance Improvement Plan (PIP) Counseling Document/90 day new hire extension of 30 days. We are awaiting a decision from HR on whether to continue training in house, or traveling with another manger. The decision to hold on travel is to allow us to formulate continued training to assist with your success as a WMS Visitor.

We will not be proceeding with your current travel request until we are confirmed on the next few weeks of training development.

Tammy

**From:** Lisa Brewer
**Sent:** Friday, January 11, 2019 3:32 PM
**To:** Laura Fletcher <LFletcher@CostcoAuto.com>
**Cc:** Tammy Compere <TCompere@CostcoAuto.com>; Trish Templeton <ttempleton@affinitydev.com>; Heidi Conaway <hconaway@affinitydev.com>; 'lisalorene2000@yahoo.com' <lisalorene2000@yahoo.com>
**Subject:** TRAVEL HOLD DUE TO SICK DAY REQUEST - Laura Fletcher 1/11/19
**Importance:** High

*THIS*

ADG Management:

The call I just had with Laura Fletcher was extremely disturbing. I am having great difficulty processing the many unwarranted changes, miscommunications and deceptions that are inexplicably being directed at me on a weekly almost daily basis now.

The email below and this screenshot from my Outlook sent folder corroborates exactly what I said about the sudden decision to put my travel back on hold following my request for sick time off – which I was entitled to.

The chronology bears this out:
- Monday 1/7 email to resume travel;
- Wednesday 1/9 after 2:58pm a secret decision to re-hold the travel after Brewer submits sick time request per screenshot below
- Friday 1/11 – 3pm ct Laura returns Brewer's 2:17pm central call about unaddressed work matters to tell her the travel is on hold again

I am sending this email to document the occurrence for my records.

*YANK*

1



"you need permission to perform this action"

Lisa Brewer

Costco Auto Program

Warehouse Marketing Support Visitor

(858) 943-5938 Direct/Fax

lbrewer@costcoauto.com

NEW VEHICLE DAMAGE
PAPERWORK
3/29/19

**Lisa Brewer**

| | |
|---|---|
| **From:** | Asmar Fontenot (ADG IT Helpdesk) <support@adghelpdesk.zendesk.com> |
| **Sent:** | Friday, March 29, 2019 5:22 PM |
| **To:** | Lisa Brewer |
| **Subject:** | [Ticket: 10242] Re: Q Drive Denied Permission Error |

##- Please type your reply above this line -##

Your request (10242) has been updated. To add additional comments, reply to this email.
You can view your ticket by clicking the following link.

https://adghelpdesk.zendesk.com/hc/requests/10242

---

 **Asmar Fontenot** (Affinity Development Group)

Mar 29, 3:21 PM PDT

Hi Lisa,

You are unable to edit this folder because it is a 'protected folder' as designated by management in the Operations dept. I can add you to the group that can edit the folder, but will need to copy in an Operations Manager to approve the request since it's under that department's folder.

Now for the long version, which I'm happy to share. :)
Our Q: drive is a big hairy, hodgepodge of permissions that came together organically as the company has grown over the years. As departments formed and the need to separate their data into folders happened, it was not done properly, thus any and all CAP employees full access to all folders in the Q: drive, which should not be the case for a number of reasons. As such, rather than switch to a more appropriate system, on a case-by-case basis some folders where 'locked down' by the department managers and given unique permissions to control and restrict access to the data.

We are working on a new project that will at least separate out each departments data from one another. Files and folders will still be able to be shared across departments (Operations has that need more than anyone), but will be done in a way that's more organized and manageable.

Please reply and copy the 'project owner' or another manager in Ops so they can confirm your access in this ticket.

1

Thanks,
Asmar Fontenot
IT Systems Engineer
Affinity Development Group
858-777-6533

 **Lisa Brewer**

Mar 29, 1:27 PM PDT

Hello,

Per the email below, I am unable to create folders on the Q drive which is needed to properly record display vehicle damage from Costco.

Please advise as to nature and disposition of problem.

Thank you

Lisa Brewer
Costco Auto Program
Warehouse Marketing Support Visitor
(858) 943-5938 Direct/Fax
lbrewer@costcoauto.com <mailto:lbrewer@costcoauto.com>

From: Laura Fletcher
Sent: Friday, March 29, 2019 2:46 PM
To: Lisa Brewer <LBrewer@CostcoAuto.com>
Subject: RE: 648 Maple Grove Jeep Incident Paperwork, Photos and Denied Permission

I suggest you send in a ticket to the IT helpdesk.

Laura Fletcher
Warehouse Marketing Support Manager
Costco Auto Program
lfletcher@costcoauto.com <mailto:lfletcher@costcoauto.com>
(858) 777-5158 Direct/Fax

From: Lisa Brewer [mailto:LBrewer@CostcoAuto.com]
Sent: Friday, March 29, 2019 1:55 PM

To: Laura Fletcher <LFletcher@CostcoAuto.com <mailto:LFletcher@CostcoAuto.com>>
Subject: FW: 648 Maple Grove Jeep Incident Paperwork, Photos and Denied Permission

I'm using Mimecast to share large files with you. Please see the attached instructions.
----------------------------------
Hi Laura,

I just received from the warehouse the universal checklist and incident report (attached). I am trying to complete the Damage reporting process by creating a new folder in the Q Drive and received the following message stating I do not have permission to do so. Why would this be in place? I have attached the damage photos to this email as well.

[cid:image001.png@01D4E646.85A46630]

Lisa Brewer
Costco Auto Program
Warehouse Marketing Support Visitor
(858) 943-5938 Direct/Fax
lbrewer@costcoauto.com <mailto:lbrewer@costcoauto.com>

Attachment(s)
image001.png

This email is a service from Affinity Development Group. Delivered by Zendesk

FW: Q Drive Denied Permission Error

From: Lisa Brewer (LBrewer@CostcoAuto.com)
To: lisalorene2000@yahoo.com
Date: Friday, March 29, 2019, 03:28 PM CDT

**From:** Lisa Brewer
**Sent:** Friday, March 29, 2019 3:28 PM
**To:** IT Helpdesk Mailbox <ithelpdesk@affinitydev.com>
**Subject:** Q Drive Denied Permission Error

Hello,

Per the email below, I am unable to create folders on the Q drive which is needed to properly record display vehicle damage from Costco.

Please advise as to nature and disposition of problem.

Thank you

Lisa Brewer

Costco Auto Program

Warehouse Marketing Support Visitor

(858) 943-5938 Direct/Fax

lbrewer@costcoauto.com


**From:** Laura Fletcher
**Sent:** Friday, March 29, 2019 2:46 PM
**To:** Lisa Brewer <LBrewer@CostcoAuto.com>
**Subject:** RE: 648 Maple Grove Jeep Incident Paperwork, Photos and Denied Permission

I suggest you send in a ticket to the IT helpdesk.

**Laura Fletcher**

Warehouse Marketing Support Manager

Costco Auto Program

lfletcher@costcoauto.com

(858) 777-5158 Direct/Fax


**From:** Lisa Brewer [mailto:LBrewer@CostcoAuto.com]
**Sent:** Friday, March 29, 2019 1:55 PM
**To:** Laura Fletcher <LFletcher@CostcoAuto.com>
**Subject:** FW: 648 Maple Grove Jeep Incident Paperwork, Photos and Denied Permission

I'm using Mimecast to share large files with you. Please see the attached instructions.

Hi Laura,

## FW: Lands End Clothing Selection 5 + 1 ORDER FINALLY PLACED

From:  Lisa Brewer (LBrewer@CostcoAuto.com)

To:     lisalorene2000@yahoo.com

Date:  Tuesday, April 2, 2019, 08:18 AM CDT

**From:** Laura Fletcher
**Sent:** Monday, April 1, 2019 1:01 PM
**To:** Lisa Brewer <LBrewer@CostcoAuto.com>
**Subject:** RE: Lands End Clothing Selection 5 + 1

Lisa,

The attached order is placed.  When I receive confirmation of shipment I will pass along.

**Laura Fletcher**

Warehouse Marketing Support Manager

Costco Auto Program

lfletcher@costcoauto.com

(858) 777-5158 Direct/Fax

**From:** Lisa Brewer
**Sent:** Friday, March 29, 2019 4:09 PM
**To:** Laura Fletcher <LFletcher@CostcoAuto.com>
**Cc:** Tammy Compere <TCompere@CostcoAuto.com>
**Subject:** FW: Lands End Clothing Selection 5 + 1

Hi Laura,